**In re Jason RUSHING, Debtor.**

**Bankruptcy No. 97–51279(2)7.**

United States Bankruptcy Court,
W.D. Kentucky,
Louisville Division.

Feb. 25, 2000.

Michael A. Crider, Marion, KY, for Debtor.

Alan Stout, Stout Law Office, Marion, KY, trustee.

## MEMORANDUM–OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is before the Court on two motions: (1) The Motion of the Chapter 7 Trustee, Alan C. Stout ("Trustee"), for Rule to issue against the National Asbestos Workers Pension Fund ("the Fund") to show cause why it should not be held in contempt for its failure to abide by this Court's October 7, 1999 Order; and (2) the Fund's Motion to Vacate the October 7, 1999 Order. The Court has thoroughly reviewed the briefs filed by both parties, including Trustee's Reply and the Fund's Sur–Reply, as well as the case law cited therein. For the reasons set forth below, the Court finds that the pension funds which are the subject of this dispute are not property of the estate and are not subject to this Court's jurisdiction. Accordingly, by separate Order, Trustee's Motion for Rule will be overruled and the Fund's Motion to Vacate the October 7, 1999 Order will be sustained.

## FACTS

The subject of this dispute concerns funds amounting to $1,125.00 paid by the Debtor's employer, on the Debtor's behalf, into the Fund within 120 days of the Debtor's bankruptcy filing. The Fund is an employee benefit pension plan, which was set up under the guidelines of the Employee Retirement Income Security Act of 1974 ("ERISA"). In accordance with the guidelines of that Act, the Fund does not maintain individual accounts in the names of participants and participants are not allowed to make individual contributions to the Fund. Nor are there any assets to which participants have control or access. All contributions to the Fund are made on behalf of employees solely by employers in accordance with the collective bargaining agreements entered into between the employer and the local union of the International Association of Heat and Frost Insulators and Asbestos Workers. As a defined benefit plan under ERISA, the contributions on behalf of all employees are pooled and invested. Benefits are payable to participants only when specific eligibility requirements are satisfied, and then in accordance with the terms of the Plan.

The Debtor is a participant in the Fund, as defined in Section 3(7) of ERISA. 29 U.S.C. § 1002(7). He is an employee who may become eligible to receive a benefit. Debtor has accrued the rights to receive future benefits from the Fund. He has not, however, currently satisfied the eligibility requirements to receive such distributions. To receive a distribution of benefits under the Plan, one of the following criteria is required to be met: retirement after the earlier of 30 years of service in employment covered by the Plan on attainment of age 55, permanent and total disability, or death. Debtor has not at this time met any of these criteria.

Trustee filed an Objection to Debtor's claim of exemption pursuant to K.R.S. 427.150 for all contributions paid into the Fund within the 120 day period preceding the filing of Debtor's bankruptcy. On February 26, 1998, the Court sustained Trustee's Objection "to the extent of any contributions *by the debtor* to the debtor's retirement accounts, Asbestos Workers, Local No. 37, and National Asbestos Workers made within 120 days prior to the filing of the bankruptcy petition" (Feb. 26, 1998 Order) (emphasis added). The Fund did not turnover any monies following that Order, and on October 7, 1999, Trustee moved the Court for turnover of funds in the amount of $1,125.00, representing the amount of the contributions paid into the Fund on the Debtor's behalf during the 120 days preceding the filing of his bankruptcy. The Court sustained the Trustee's Motion and directed by Order dated October 7, 1999, the payment of $1,125.00 from the Fund. That is the Order the Fund seeks to have vacated.

In response, the Fund sent the Trustee a letter dated October 18, 1999, which has been filed as pleading number 10 in this case, explaining that the funds at issue are not property of the estate and not subject to turnover. Thereafter, the Trustee filed the Motion for Rule to Issue against the Fund to Show Cause why it should not be held in Contempt of Court for its failure to abide by the October 7, 1999 Order. Approximately two weeks thereafter, on November 29, 1999, the Fund filed its Motion to Vacate the October 7, 1999 Order and to deny the Trustee's Motion for Rule.

On December 1, 1999, a hearing was held on these motions. The Trustee appeared; however, counsel for the Fund did not, claiming that they did not receive notice of the hearing. The Court ordered the Trustee to file a Reply in support of his Motion for Rule. Thereafter, the Fund moved this Court for leave to file a Sur–Reply, which the Court granted.

### LEGAL DISCUSSION

At the outset, the Court notes that the February 26, 1998 Order, which the October 7, 1999 Order sought to enforce by directing turnover of funds, authorized the Trustee to collect contributions only "to the extent of any contributions *by the debtor* to the debtor's retirement accounts, Asbestos Workers, Local No. 37, and National Asbestos Workers made within 120 days prior to the filing of the bankruptcy petition" (emphasis added). It has now been brought to the Court's attention that the Debtor did not himself make contributions on his own behalf. Thus, the Court must consider the follow-up question of whether the Court's Order should be expanded to include "all contributions made on the Debtor's behalf." The Court finds that it should not.

### A. ERISA'S ANTI–ALIENATION PROVISION EXCLUDES THE PENSION BENEFITS FROM THE DEBTOR'S BANKRUPTCY ESTATE.

■ Upon reviewing the language of 11 U.S.C. § 541(c)(2) and ERISA's anti-alien-ation provision found at Section 206(d)(1) of 29 U.S.C. § 1056(d)(1), along with the United States Supreme Court's construction of those statutes, it is clear that the contributions at issue are not property of the estate and not subject to this Court's jurisdiction.

The Court begins its analysis with section 541(c)(2) of the Bankruptcy Code. That section carves out an exclusion from the broad definition of "property of the estate," set forth in Section 541(a)(1). Section 541(c)(2) reads:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The plain language of this provision "entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate,* 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The Supreme Court has held that the provision encompasses the transfer restrictions contained in ERISA. *Id.* at 759–60, 112 S.Ct. 2242.

Section 206(d)(1) of ERISA is an anti-alienation provision. It states, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The Supreme Court has stated that ERISA's anti-alienation provision clearly imposes a "restriction on the transfer of a beneficial interest of the debtor," and thus comes within the purview of § 541(c)(2) of the Bankruptcy Code. *Id.* Accordingly, the anti-alienation requirement for ERISA-qualified pension plans constitutes an enforceable transfer restriction under § 541(c)(2), exempting ERISA-covered pension benefits from the property of the Bankruptcy estate. *Id.*

The pension benefits under the control of the Fund complied with the anti-alien-

ation requirements of ERISA, containing the following non-assignment clause:

Section 8.11—Non–Assignment of Benefits

An Employee, Beneficiary or Retired Employee does not have any right to assign, alienate, transfer, sell, mortgage, encumber, pledge, or anticipate any retirement payments, and such payments will not in any way be subject to any legal process, to levy, execution upon or attachment or garnishment proceeding for the payment of any claim against any Employee, Beneficiary or Retired Employee. Payments are not subject to the jurisdiction of any bankruptcy court or insolvency proceedings by operation of law or otherwise. Any such assignment, etc., is void and has no effect whatsoever. However, payments may be made by the Fund to an Alternate Payee in accordance with the terms of a Qualified Domestic Relations Order as defined in ERISA.

Thus, pursuant to the plain language of the statute, the Supreme Court has expressly held that such transfer restrictions contained in ERISA-qualified pension plans are enforceable under Section 541(c)(2) of the Bankruptcy Code, and the pension benefits are accordingly exempt from the property of the bankruptcy estate. *Patterson,* 504 U.S. at 759–60, 112 S.Ct. 2242; *See also In re Harshbarger,* 66 F.3d 775, 777 (6th Cir.1995) (holding funds already in an ERISA account cannot be garnished by the bankruptcy estate because "Section 541(c)(2) excludes a debtor's beneficial interest in a trust that is subject to a restriction on transfer enforceable under 'applicable nonbankruptcy law.' "); *In re Bell & Beckwith,* 5 F.3d 150, 152–53 (6th Cir.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994) ("ERISA's anti-alienation protection applies in the context of bankruptcy as well, so that a bankrupt's pension benefits were excluded from [the] bankruptcy estate."); *In re Lucas,* 924 F.2d 597, 603 (6th Cir.), *cert. denied,* 500 U.S. 959, 111 S.Ct.

2275, 114 L.Ed.2d 726 (1991) (holding prior to *Patterson* that pension benefits are not property of the bankruptcy estate under the Bankruptcy Code).

## B. KENTUCKY'S STATE LAW GOVERNING ERISA–QUALIFIED EMPLOYEE BENEFIT PLANS IS PRE–EMPTED BY ERISA.

The Trustee relies on K.R.S. 427.150(2)(f) in attempting to recover the pension funds at issue in this case. K.R.S. 427.150(2)(f) establishes an exemption for pension funds, except for contributions made within 120 days before the debtor files for bankruptcy. The Trustee asserts that "the exemption scheme of the Commonwealth of Kentucky as set forth in K.R.S. 427 et seq. applies in all bankruptcies filed in the Commonwealth of Kentucky" regardless of whether they are subject to the anti-alienation provisions of ERISA (Trustee's Reply).

The Court notes that ERISA contains a broad pre-emption provision. ERISA Section 514 provides:

... the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b) ... For the purposes of this section ... the term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State ... The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this title.

29 U.S.C. § 1144(a), (c)(1), (c)(2).

The plain language of this Statute clearly bars the enforceability of any state law that "relates to" an ERISA-covered pension plan. 29 U.S.C. § 1144. The United States Supreme Court has consistently interpreted this Statute very broadly, holding that the plain meaning of the language

evidences Congress's clear intent to broadly preclude state attempts to regulate ERISA-qualified employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). The preemption clause "establishes as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). The Supreme Court has stated that "Congress used the words 'relate to' in section 514(a) in their broad sense." *Shaw*, 463 U.S. at 98, 103 S.Ct. 2890; *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 138–39, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (ERISA's pre-emption provision is "clearly expansive"); *FMC*, 498 U.S. at 58, 111 S.Ct. 403 (the provision is "conspicuous for its breadth"); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

In fact, the Supreme Court has held that "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. 478. A state law "relates to" an employee benefit plan if it simply "has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97, 103 S.Ct. 2890.

The Supreme Court has rendered this broad interpretation in order to "eliminat[e] the threat of conflicting and inconsistent state and local regulation." *Id.* at 99, 103 S.Ct. 2890; *see also Fort Halifax Packing*, 482 U.S. at 11, 107 S.Ct. 2211 (holding ERISA § 514 was designed to decrease the administrative burden for employee benefit plans by precluding a "patchwork scheme of regulation" and ensuring the existence of only "a single set of regulations.") By including the pre-emption clause in ERISA, Congress recognized "the federal interest and the need for national uniformity are so great that enforcement of state regulation should be precluded." H.R.Rep. No. 94–1785, p. 47 (1977); *See also Shaw*, 463 U.S. at 99, 103 S.Ct. 2890; *See also Patterson*, 504 U.S. at 764–65, 112 S.Ct. 2242; *Bell & Beckwith*, 5 F.3d at 153. The Supreme Court has explained:

> These statements reflect recognition of the administrative realities of employee benefit plans. An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. A plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not in others; to process claims in a certain way in some States but not in others; and to comply with certain fiduciary standards in some States but not in others.

*Fort Halifax Packing*, 482 U.S. at 9, 107 S.Ct. 2211.

Accomplishing the goal of uniformity requires "the displacement of State action in the field of private employee benefit programs." H.R.Rep. No. 94–1785, p. 47 (1977); *Shaw*, 463 U.S. at 99, 103 S.Ct. 2890. Thus, it was Congress's intent to foreclose all non-federal regulation of ERISA-qualified plans, except for some

very limited, explicitly described exceptions not applicable to the case at bar. *Shaw,* 463 U.S. at 104, 103 S.Ct. 2890.

Consequently, as applied to this case, no provision of K.R.S. 427.150 may be utilized to circumvent or otherwise diminish the operation of the anti-alienation provisions of ERISA and the Plan. Thus, the funds at issue did not become property of the estate and are not subject to turnover.

### *CONCLUSION*

For the above-stated reasons, the Court will by separate Order (1) overrule the Trustee's Motion for Rule to Show Cause Why the Fund Should Not be Held in Contempt of Court, and (2) sustain the Fund's Motion to Vacate the October 7, 1999 Order of this Court.