**In re Michael A. PARKS and Theresa L. Parks, Debtors.**

**No. 00B–27517.**

United States Bankruptcy Court,
D. Utah,
Central Division.

Nov. 9, 2000.

Stephen W. Rupp, McKay, Burton & Thurman, Salt Lake City, Utah, for trustee.

Daniel R. Boone, Salt Lake City, Utah, for debtors.

## MEMORANDUM DECISION AND ORDER

JUDITH A. BOULDEN, Bankruptcy Judge.

This contested matter raises the issue of whether funds held in an ERISA qualified pension plan, over which the debtor has

complete control, are included in property of the bankruptcy estate, and if so, whether they are exempt. The issue is before the court upon the Chapter 7 Trustee's Objection to Exemption claimed by Theresa Parks, one of the debtors herein (Debtor), to property identified as "401(k) from employer" and claimed exempt pursuant to UTAH CODE ANN. § 78–23–5(1)(a)(x). For the reasons set forth below, the Court concludes, contrary to a prior bench ruling, that the funds are excluded from the estate.

## FACTS

The facts are not in dispute. While employed with Tooele Federal Credit Union, the Debtor participated in its 401(k) Retirement Plan (Plan), an ERISA qualified pension plan administered by CUNA Mutual Group (CUNA). There appears to be no dispute that the Plan contained an anti-alienation provision that constituted a restriction on transfer enforceable under non-bankruptcy law within the meaning of 11 U.S.C. § 541(c)(2). The Debtor was then terminated from her employment on June 29, 2000, and, together with her husband, filed a petition seeking relief under Chapter 7 on July 10, 2000.

On the date of the Chapter 7 filing, the Debtor was no longer a Plan participant because the conditions of the Plan required current employment to qualify for Plan participation. The terms of the Plan provided that after the termination of her employment, the Debtor had the absolute right to withdraw the funds deposited into the Plan (Plan Funds). The Plan Funds remained with CUNA awaiting direction from the Debtor regarding their disposition on the date of filing. Two days after

the Chapter 7 case was filed, the Debtor opened an Individual Retirement Account at Mountain America Credit Union and approximately a month later, at the Debtor's direction, CUNA transferred the Plan Funds to the IRA account.

After the Chapter 7 filing, the Debtor amended her Chapter 7 schedules which originally did not list the Plan Funds, to claim the property as exempt under UTAH CODE ANN. § 78–23–5(1)(a)(x). The Chapter 7 Trustee filed a timely objection to the exemption. He argued that, since the Debtor had absolute control over the disposition of the Plan Funds because of the prepetition termination of her employment, the Plan Funds lost their anti-alienation characteristics as part of an ERISA qualified pension plan. Therefore, he argues, *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992)[1] is inapplicable, the Plan Funds are property of the estate, and the Plan Funds were improperly claimed as exempt under UTAH CODE ANN. § 78–23–5(1)(a)(x). *See also, Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 676 (10th Cir.1991) (pension funds were excluded from the estate since the debtor had not retired or terminated employment with the employer sponsor of the plan).

The Debtor responded to the Trustee's objection by pointing out that the Plan Funds remained in the Plan until such time as they were deposited into the IRA. Therefore, she argues, they were exempt under either the ERISA anti-alienation provisions, or they were exempt under the state exemption statutes.

The Court heard the parties arguments and ruled in favor of the Trustee at the

---

1. It is of some interest to note that in *Shumate*, the debtor Shumate's employer had filed Chapter 7 and the Chapter 7 trustee terminated and liquidated the ERISA qualified plan but would not distribute any funds to Shumate. Shumate also filed Chapter 7 and Patterson was appointed as his trustee. Patterson sued the employer's Chapter 7 trustee to recover Shumate's interest in the plan for the benefit of Shumate's estate, and

Shumate then sought return of the funds directly to himself. At the time of his filing, it appears that Shumate had already terminated his employment with his prior employer which was then in a Chapter 7 and that the plan funds were held by the employer's Chapter 7 trustee. In any event, the Supreme Court did not specifically address the issue as it is raised by the parties in this case.

hearing, concluding that the Debtor's absolute control of the Plan Funds on the date of filing was dispositive of the dispute. Upon subsequent investigation of applicable case law, the Court concludes that controlling non-bankruptcy case law dictates that the Plan Funds remain protected by the anti-alienation provisions of ERISA so long as they are with the fiduciary responsibility of CUNA. Therefore, the Plan Funds are excluded from the estate under 11 U.S.C. § 541(c)(2).

## DISCUSSION

■ The Trustee argues that upon filing, he succeeds to any rights or powers of the Debtor. Since the Debtor has complete control of the Plan Funds, the Trustee argues that he may exercise that control and direct surrender of the Plan Funds to the estate.[2] The Trustee is correct that he has the exclusive right to administer any asset of the estate pursuant to 11 U.S.C. § 704(1). His authority, however, only extends to administration of property of the estate. Therefore, if the Plan Funds are 11 U.S.C. § 541 property

as of the date of filing,[3] they are subject to the Trustee's administration, subject only to any valid claim of exemption raised by the Debtor.

■ Some courts that have found a debtor's control to be determinative of whether plan funds become property of the estate. However, these cases are usually in the context of funds that were once in an ERISA qualified plan but have been transferred prepetition into an IRA that does not have the same anti-alienation characteristics as an ERISA qualified plan. *In re Ekanger*, 1999 WL 671866 (Bankr. E.D.Va.1999) (Debtor exercised control over funds removed by the Debtor from ERISA qualified plan that he then rolled over into an IRA, and the Court found the IRA to be property of the estate); *In re Nudo*, 147 B.R. 68, 71–72 (Bankr.N.D.N.Y. 1992) (under New York law, debtor's termination of employment is not the triggering event that separates the funds held in an ERISA qualified account from anti-alienation provision, since state law protects "roll over" funds subsequently depos-

**2.** Certain cases relied upon by the Trustee are distinguishable on their facts. In *Johnston v. Mayer (In re Johnston)*, 218 B.R. 813, 817 (Bankr.E.D.Va.1998), funds were held to be property of the estate that were no longer in an ERISA-qualified plan, having been disbursed to the debtor under a qualified domestic relations order. Unlike this case, the court in *Johnston* ruled that the debtor was neither a plan participant nor a beneficiary of the plan, but merely sought to avail herself of the status of her ex-husband's plan. In *In re Caslavka*, 179 B.R. 141, 143 (Bankr.N.D.Iowa 1995), the debtor gained unrestricted access to funds in an ERISA-qualified plan and rolled them into an IRA prepetition. Finding that an IRA did not qualify as a spendthrift trust under 11 U.S.C. § 541(c)(2), the court ruled that the funds were included in the estate. *See also In re Winkler*, 164 B.R. 728, 730 (W.D.N.C.1994) (the plan's anti-alienation provisions did not terminate, even though the debtor's employment was terminated prepetition, because distribution could be deferred up to three years by the plan administrator, thus the anti-alienation protection terminated only when the debtor had control of the proceeds at the point at which the proceeds were distributed).

Finally, *In re Reid*, 139 B.R. 19 (Bankr. S.D.Ca.1992), the Debtor had unrestricted access to the funds in an ERISA qualified plan and could receive a distribution, but only if one was specifically requested. The court in *Reid*, a case decided prior to *Shumate*, followed the position of the 9th Circuit at that time that found that the debtor's interest in the Plan could be excluded from property of the estate only if the plan qualified as a spendthrift trust under state law.

**3.** A determination of what property is included in the estate, as well as what property is exempt, is measured as of the date of filing. 11 U.S.C. §§ 541(a)(1), and § 522(b)(2)(a); *In re Marcus*, 1 F.3d 1050 (10th Cir.1993). Therefore, the Court does not address the issue of whether ERISA qualified funds that are rolled over into an Individual Retirement Account prepetition are property of the estate, for those are not the facts in this case. *E.g.*, *In re Goldman*, 192 B.R. 1 (D.Mass.1996); *Rodolakis v. Shadduck (In re Shadduck)*, 208 B.R. 1 (Bankr.D.Mass.1997); *Eisenberg v. Houck (In re Houck)*, 181 B.R. 187 (Bankr. E.D.Pa.1995).

ited in an IRA). *But see In re Conner*, 73 F.3d 258, 260 (9th Cir.1996) (stating that *Shumate* appears to have discounted any distinctions based on the debtors' control of their assets); *accord In re Pierce*, 1994 WL 266381 (Bankr.W.D.Pa.1994) (Debtor participated in an ERISA qualified plan, was discharged from her employment immediately prior to filing Chapter 7 and had an immediate right to request her entire balance. Court ruled that although under common law debtor's control of the benefits would have excluded the plan from a spendthrift provision, the interpretation of ERISA in bankruptcy excluded the benefits under § 541(c)(2)).

The Court concludes that the issue does not turn on the Debtor's control over the Plan Funds or whether the Trustee can exercise the Debtor's right to direct disbursement upon filing. Instead, the issue is whether, under ERISA, the Plan Funds retained their anti-alienation characteristics after the Debtor's employment was terminated but while the Plan Funds remained under CUNA's control. If, because the Debtor was no longer a Plan participant and had the discretion to remove the funds, ERISA's anti-alienation protection ceased, then the Plan Funds would be included in the estate and the Court would need to reach whether the Plan Funds were exempt. Resolution of the matter is therefore controlled by an interpretation of ERISA.

The ERISA issue is disposed of in this Circuit by *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078, 1082–83 (10th Cir.1994) (en banc), *cert. denied*, 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995), in which several prior rulings narrowed the precise point in time that pension benefits loose their anti-alienation protection. Guidry was a union official and trustee of a union pension fund who was convicted of embezzling union funds in violation of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA) which seeks to combat union officials' corruption and protect members

interests. While in prison, Guidry sued the pension fund when the fund determined that Guidry had forfeited his right to plan benefits as a result of his criminal activity. The District Court concluded that the prohibition on assignment or alienation of pension benefits contained in ERISA's § 206(d)(1) (codified as 29 U.S.C. § 1056(d)(1) (1982)) did not preclude imposition of a constructive trust in favor of the union on the pension benefits Guidry had or was to receive. The Tenth Circuit affirmed. The Supreme Court reversed, holding that the remedial provisions of LMRDA did not override ERISA's prohibition on pension benefit alienation. *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 371, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). Upon remand, the District Court ruled that pension funds received by Guidry were protected by ERISA's anti-alienation provisions so long as the proceeds were clearly identified and had not been co-mingled or used for the acquisition of assets. *Guidry*, 39 F.3d at 1081. This time the Circuit reversed the District Court, ruling that "section 206(d)(1) did not extend to protect private pension benefits once paid to and received by the beneficiary." *Id.* In the *en banc* opinion regarding the point at which ERISA's anti-alienation protection terminates, the Circuit held:

> [A] plan is obligated to protect benefits from alienation at least up to point of payment.... "[B]enefits" are protected by the anti-alienation provision of section 206(d)(1) only so long as they are within the fiduciary responsibility of private plan managers. Following distribution of benefits to the plan participant or beneficiary, a creditor no longer has a right against the plan.... ERISA section 206(d)(1) protects ERISA-qualified pension benefits from garnishment only until paid to and received by plan participants or beneficiaries.

*Id.* at 1082–83 (citing *NCNB Fin. Servs., Inc. v. Shumate*, 829 F.Supp. 178 (W.D.Va. 1993)) (once the line of actual receipt is

crossed, ERISA no longer protects funds originating in private pension plan). *Accord In re Holst,* 192 B.R. 194, 199–200 (Bankr.N.D.Iowa 1996) (even though Debtor had absolute control over ERISA qualified plan funds, the Court determined that ERISA anti-alienation protection continued where distribution had not taken place even if there was a present right to distribution, *citing Tenneco, Inc. v. First Virginia Bank,* 698 F.2d 688 (4th Cir.1983) (when benefits become payable in a lump sum because of a separation of the employee from the employer's service, ERISA still prohibits seizure of such funds by a creditor under a writ of garnishment)).

Even though *Guidry's* interpretation of ERISA appears dispositive of the narrow issue in this case, it is worth considering whether there is an equitable reason that *Guidry* should not apply in this bankruptcy context. In this Court's view, that issue is resolved by the Supreme Court's ruling in *Guidry,* 493 U.S. at 375–77, 110 S.Ct. 680. The Supreme Court considered whether it was appropriate to approve a generalized equitable exception to ERISA's prohibition on the alienation of pension benefits—either for employee malfeasance or for criminal misconduct. It concluded that such an exception must be made by Congress, even though "[u]nderstandably, there may be a natural distaste for the result … reach[ed]." *Id.* at 688, 110 S.Ct. 900. If the Supreme Court could not find an exception to ERISA's anti-alienation provisions, and instead ruled that an embezzler could defeat a constructive trust placed on his pension benefits in favor of the union from which he embezzled, it is extremely unlikely that any exception would be found to deprive a debtor of pension benefits so that the funds may be used to pay creditors. Accordingly, it is hereby

**ORDERED,** that the Court's prior bench ruling is vacated, and the Trustee's objection to exemption is overruled be-

cause the Debtor's Plan Funds are not property of this estate.