**In re Melanie A. LARSON, Debtor.**

**Harold Corzin, Trustee, Plaintiff,**

**v.**

**Melanie A. Larson, Defendant.**

**Bankruptcy No. 04–52150.
Adversary No. 04–5163.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

April 17, 2006.

Michael Moran, Gibson & Lowry, Cuyahoga Falls, OH, for Plaintiff–Trustee.

Lee Kravitz, Cleveland, OH, for Defendant–Debtor.

## MEMORANDUM OPINION RE: TRUSTEE'S COMPLAINT FOR TURNOVER

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter comes before the Court on plaintiff-trustee's complaint to turn over estate property pursuant to §§ 542 and 543 of the Bankruptcy Code. A trial in this matter was held on February 27, 2006 and appearing were Michael Moran, counsel for plaintiff-trustee and Lee Kravitz, counsel for defendant-debtor. During the trial, neither counsel called any witnesses nor introduced any evidence but instead presented only brief oral arguments. At the conclusion of the trial, the Court took the matter under advisement. Based upon counsels' arguments, the pleadings in this adversary proceeding and defendant-debtor's main chapter 7 case and pursuant to FED. R. BANKR. P. 7052, the Court makes the following findings of fact and conclusions of law.

## BACKGROUND

Melanie Larson filed a voluntary chapter 7 bankruptcy petition on April 22, 2004. On her Schedule B—Personal Property, debtor listed an interest in a 401(k) plan and on her Schedule C—Property Claimed as Exempt, debtor claimed a $1,300.00 exemption in that 401(k) plan pursuant to only Ohio Revised Code ("ORC") § 2329.66(A)(10)(c). Debtor has never amended her Schedules and the trustee has never filed an objection to debtor's $1,300.00 exemption.

On October 18, 2004 plaintiff-trustee filed a complaint claiming that the funds in defendant-debtor's 401(k) plan are property of her chapter 7 bankruptcy estate and, thus, subject to turnover pursuant to §§ 542 and 543 of the Bankruptcy Code. Named as defendants in the complaint were debtor, Melanie Larson, and the plan administrator of the S.S. Kemp & Co. 401(k) Plan (the "Plan"). On November 9, 2004 defendant-debtor filed an amended answer to the complaint. The plan administrator has never filed an answer or other responsive pleading in this matter.[1]

The initial pre-trial conference was held on December 15, 2004. During that pre-trial conference counsel represented that the relevant facts were not in dispute and that the matter could be decided by dispositive motions. Counsel agreed that they would engage in informal discovery and counsel for defendant-debtor represented that he would forward to plaintiff-trustee's counsel all relevant documents regarding the Plan. No formal discovery deadline was set and the Court issued an Order establishing motion filing deadlines [docket # 15]. Upon a motion by plaintiff-trustee, the Court issued an order extending the deadlines for the parties to file their dispositive motions [docket # 20].

Defendant-debtor filed her motion for summary judgment on May 16, 2005 [dock-

---

1. Given the plan administrator's failure to respond to the complaint plaintiff-trustee filed a motion seeking default judgment [docket # 16]. Defendant-debtor filed an objection to the motion for default judgment [docket # 17]. The Court withheld ruling on that motion pending the resolution of issues between plaintiff-trustee and defendant-debtor.

et # 31], plaintiff-trustee filed his motion for summary judgment on May 31, 2005 [docket # 34] and the matter was taken under advisement. On July 27, 2005 this Court issued an order denying both parties' motions for summary judgment because at least one operative fact was still in dispute.

If the Plan contains an anti-alienation provision constituting a restriction on transfer that is enforceable under § 541(c)(2), the issue to be decided in this case would be a legal one: Whether the funds in the Plan retained their anti-alienation characteristics after debtor's employment ... was terminated. Courts that have considered this issue have come to differing conclusions ....

Although plaintiff-trustee and defendant-debtor may agree on the operative facts in this case, their motions for summary judgment do not make this clear and thus, cannot be granted. Accordingly, each of those motions is hereby *denied* and the Court will hold a further pre-trial conference in this matter on *August 24, 2005 at 3:00 p.m.* By not later than *August 22, 2005,* counsel shall have *jointly* filed with the Court a list of all matters which are not in dispute in this case and which can be the subject of stipulations including any documentary evidence upon which the parties intend to rely in prosecution of their respective cases.

Order Denying Mot. for S.J. at pg. 4–5 (footnotes omitted) [docket # 35].

The August 24, 2005 pre-trial conference was held as scheduled even though counsel had not yet filed their list of stipulations. During that pre-trial conference counsel indicated that neither had obtained an actual copy of the Plan. Accordingly, the stipulations filing deadline was extended to October 7, 2005 and a further pre-trial conference was scheduled for October 19, 2005 [docket # 37].

The October 19, 2005 pre-trial conference was held as scheduled but again counsel had not filed any stipulations. During that pre-trial conference it was still unclear as to whether either counsel had acquired a copy of the Plan. Counsel indicated that they would work on obtaining such document and reviewing its terms so that they could prepare stipulations regarding all relevant factual matters which were not disputed by their clients. The stipulations filing deadline was again extended to November 11, 2005 and a further pre-trial conference was scheduled for November 14, 2005 [docket # 38]. Prior to the November 14 pre-trial conference being held, counsel requested an adjournment because they had still not yet obtained a copy of the Plan. That request was granted and the stipulations filing deadline was extended to January 6, 2006. A telephonic status conference was set for January 9, 2006.

On January 9, 2006 counsel finally filed a list of stipulations regarding the authenticity of certain documents which they attached, in their entirety, to the stipulations [docket # 41]. Counsel did not, however, include stipulations to *any* facts regarding this case. The January 9 status conference was held as scheduled. Given the parties' continued inability to agree on any factual matters and the delay in this proceeding caused by such inability, the trial was scheduled.

On February 15, 2006 counsel for plaintiff-trustee filed a witness list [docket # 46] which indicated that he would be calling two witnesses at trial: Harold Cozin, the chapter 7 trustee and Melanie Larson, debtor. Counsel for defendant-debtor also filed a witness list on February 15, 2006 [docket # 47] which indicated that he would be calling his client as a witness at trial. At the beginning of trial both counsel indicated that they would not be calling

any witnesses but would instead be relying upon stipulations of fact that were filed on February 15, 2006 [docket # 45]. The Court then gave counsel an opportunity to present legal argument on their respective positions.

## THE STIPULATED FACTS

1. Melanie Larson was an employee of a company which enabled her to be a plan participant in the Plan as of January 2, 2004.

2. The balance in Melanie Larson's account in the Plan was $12,544.99. [The funds in the Plan which are attributable to defendant-debtor will hereinafter be referred to as the "Funds"].

3. Melanie Larson filed her petition for relief under Chapter 7 of the Bankruptcy Code on April 22, 2004.

4. At the time of the filing of her petition, Melanie Larson was no longer an employee of the company which authorized and permitted contributions to the Plan.

5. The Plan is a plan qualified under The Employee Retirement Income Security Act of 1974, as amended [29 U.S.C. § 1001 et seq.] ("ERISA") and contains an appropriate clause precluding alienation or assignment of the interests of the plan participant pursuant to 29 U.S.C. § 1056(d)(1).

## COUNSELS' LEGAL ARGUMENTS

During trial, counsel essentially reiterated the arguments made in the cross motions for summary judgment. Plaintiff-trustee contended that defendant-debtor has unrestricted access to the Funds because she is no longer a "participant" under the Plan. Plaintiff-trustee further contended that such unrestricted access mandates a finding that the Funds are property of defendant-debtor's bankruptcy estate pursuant to § 541(a) of the Bankruptcy Code. Defendant-debtor contended that, because the Funds could not be considered estate property pursuant to § 541(c)(2) if she had been employed when her bankruptcy case was filed and because she has not received any distribution from the Plan, plaintiff-trustee has no right to seek turnover of the Funds. Defendant-debtor also contended that even if the Court determines that the Funds are property of her chapter 7 estate, the Funds are exempt pursuant to ORC § 2329.66(A)(10)(c) and (A)(17).

## DEBTOR'S EXEMPTIONS

■ Regardless of whether the Funds should be excluded from property of her chapter 7 bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), this Court may first consider whether the Funds are subject to any exemption. *See In re Sforzo*, 332 B.R. 294, 296 (Bankr.N.D.Ohio 2005). Through the motion for summary judgment, in the trial brief [docket # 44] and during argument at trial, counsel for defendant-debtor has referenced a claimed exemption in the Funds pursuant to *both* ORC § 2329.66(A)(10)(c) and (A)(17). During trial, the Court reviewed debtor's Schedule C and noted for the record that the only exemption debtor claimed in the Funds was a $1,300.00 one pursuant to ORC § 2329.66(A)(10)(c). Counsel for defendant-debtor stated that the reference to only $1,300.00 was a typographical error which should instead read $13,000.00 and that debtor has always intended on also claiming an exemption pursuant to § 2329.66(A)(17). The Court further noted for the record that debtor's Schedule C has never been amended. Counsel for plaintiff-trustee indicated that his client never filed an objection to debtor's claimed exemption because it was for only $1,300.00.

■ A debtor is affirmatively required to list all property being claimed as exempt. FED. R. BANKR. P. 4003(a). Al-

though debtors are afforded a liberal right to amend the list of exemptions, such right is limited if debtor is acting in bad faith or if creditors would be somehow prejudiced. *See, e.g., Stinson v. Williamson (In re Williamson),* 804 F.2d 1355 (5th Cir.1986); *Doan v. Hudgins (In re Doan),* 672 F.2d 831 (11th Cir.1982). Debtor's failure to claim an exemption in the full amount of the Funds and to also seek an exemption pursuant to ORC § 2329.66(A)(17) appears to be due to the neglect of her counsel and not to any bad faith on her part. However, the failure to claim an exemption in the full amount of the Funds caused the chapter 7 trustee (on behalf of creditors holding unsecured claims) to forego filing an objection to the $1,300.00 exemption in the Funds that was actually claimed. Such prejudice precludes debtor from now claiming an exemption in any portion of the Funds over $1,300.00 and/or from claiming an exemption pursuant to ORC § 2329.66(A)(17). Therefore, to the extent that the Funds are deemed to be estate property, debtor is entitled to an exemption of only $1,300.00 therein given the trustee's failure to lodge any objection to that claimed exemption.

## PROPERTY OF THE ESTATE

■ An interest of the debtor in property does not become property of that debtor's bankruptcy estate if there exists "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law ..." 11 U.S.C. § 541(c)(2). An anti-assignment/anti-alienation clause un-

der ERISA constitutes such an enforceable restriction. *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Given the stipulation that the Plan contains an ERISA anti-assignment/anti-alienation clause, the issue left to be decided in this matter is whether the Funds retained ERISA protection after debtor's employment with the company which authorized and permitted contributions to the Plan was terminated.

In *In re Parks,* 255 B.R. 768 (Bankr. D.Utah 2000) the court considered facts similar to those at bar except in that case the parties had stipulated that debtor had an absolute right to withdraw the funds in her 401(k) plan given her pre-petition termination in employment.[2] As in this case, the chapter 7 trustee in *Parks* argued that since debtor had absolute control over the disposition of her plan funds those funds lost their ERISA protection and became property of her bankruptcy estate pursuant to § 541(a). The debtor in *Parks* claimed that because the funds were still being held in an ERISA qualified plan as of the time of her bankruptcy filing, those funds retained ERISA protection and were thus excluded from her bankruptcy estate pursuant to § 541(c)(2).

■ Whether or not defendant-debtor has "unrestricted access" to the Funds is still at issue in this matter as the parties did not address it in their stipulations and plaintiff-trustee did not prove it at trial.[3] Notwithstanding plaintiff-trustee's failure of proof as to a fact upon which he relies, this Court agrees with the court in *Parks*

**2.** Shortly after her bankruptcy filing the debtor in *Parks* had also opened an Individual Retirement Account and transferred her 401(k) plan funds into that IRA. Because the determination of what constitutes property of the estate is, generally, to be measured from the date of filing the court determined that it did not need to address whether or how such rollover affected the status of the 401(k) plan

funds. *In re Parks,* 255 B.R. 768, 770 n. 3 (Bankr.D.Utah 2000).

**3.** This disputed factual issue was specifically addressed by this Court in its Order denying the cross motions for summary judgment. *See* Order Denying Mot. for S.J. at pg. 3, note 3 [docket # 35].

that a debtor's control over plan funds is not the determinative issue:

> The Court concludes that the issue does not turn on the Debtor's control over the Plan Funds or whether the Trustee can exercise the Debtor's right to direct disbursement upon filing. Instead, the issue is whether, under ERISA, the Plan Funds retained their anti-alienation characteristics after the Debtor's employment was terminated but while the Plan Funds remained under [the Plan Administrator's] control. If, because the Debtor was no longer a Plan participant and had the discretion to remove the funds, ERISA's anti-alienation protection ceased, then the Plan Funds would be included in the estate.... Resolution of the matter is therefore controlled by an interpretation of ERISA.

*In re Parks*, 255 B.R. 768, 771 (Bankr. D.Utah 2000). The Court in *Parks* determined that the ERISA issue had been disposed of in its circuit pursuant to the decision in *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 39 F.3d 1078 (10th Cir.1994).

In *Guidry*, the Tenth Circuit was required to determine the precise point in time that pension benefits lose their anti-assignment/anti-alienation protection. The plaintiff in *Guidry* was a jailed former union leader who was convicted of embezzling funds from the union. While in prison, Guidry applied for early retirement benefits. Those benefits were denied when the pension fund determined that Guidry forfeited his right to plan benefits as a result of his criminal conduct. The local union (which held a $275,000 judgment against Guidry) sought to garnish any pension benefits Guidry might be entitled to via the imposition of a constructive trust against the funds. Guidry sued the pension fund and the local union and, pursuant to a decision by the U.S. Supreme Court, the early retirement benefits were ultimately awarded to Guidry. The Supreme Court also held that because Guidry's pension funds were subject to ERISA's anti-assignment/anti-alienation provision they could not be used to satisfy the union's restitution judgment.

During the course of the protracted litigation the parties agreed that all pension payments would be deposited into a single bank account and the local union ultimately sought to collect its judgment through a garnishment of the funds held in that bank account. On remand by the Supreme Court the District Court ruled that the pension payments received by Guidry were protected by ERISA's anti-assignment/anti-alienation provision so long as the proceeds were clearly identified and had not been co-mingled or used for the acquisition of assets. The Tenth Circuit reversed and ruled that ERISA's anti-assignment/anti-alienation provision does not protect pension benefits once they are paid to and received by the beneficiary.

> ERISA is a comprehensive statute intended in significant part to ensure pension benefits will actually be received upon retirement by plan participants and beneficiaries.... To that end, ERISA imposes "minimum standards" on private plan managers and employers.... The anti-alienation provision of ERISA states, as a required standard for the form and payment of benefits, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."... The provision focuses on benefits, ..., but is silent on whether the term is meant to include benefits in the nature of distributed funds no longer within the fund and held by the plan participant or beneficiary. Legislative history of [29 U.S.C. § 1056(d)(1)] has been described as sparse and inconclusive.... A House Report explains the anti-alienation provision was designed "[t]o further ensure that the employee's accured [sic] bene-

fits are actually available for retirement purposes." ... This history indicates a plan is obligated to protect benefits from alienation as least up to the point of payment so that benefits will be available for retirement purposes.... "[B]enefits" are protected by the anti-alienation provision of [29 U.S.C. § 1056(d)(1)] only so long as they are within the fiduciary responsibility of private plan managers. Following distribution of benefits to the plan participant or beneficiary, a creditor no long has a right against the plan.... ERISA [§ 1056(d)(1)] protects ERISA-qualified pension benefits from garnishment only until paid to and received by plan participants or beneficiaries.

*Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1081–83 (10th Cir.1994). *See also Hoult v. Hoult,* 373 F.3d 47 (1st Cir.2004); *U.S. v. All Funds Distributed To, or o/b/o Weiss,* 345 F.3d 49 (2nd Cir.2003); *Robbins ex rel. Robbins v. DeBuono,* 218 F.3d 197 (2nd Cir.2000); *Wright v. Riveland,* 219 F.3d 905 (9th Cir.2000); *Trucking Employees of North Jersey Welfare Fund,* 16 F.3d 52 (3rd Cir. 1994). *But see U.S. v. Smith,* 47 F.3d 681 (4th Cir.1995) (where funds are paid under terms of ERISA plan as income during retirement years ERISA continues to prohibit their alienation).

Unlike the Court in *Parks* which was bound by a decision of its Circuit Court, the Sixth Circuit has not passed on the issue at bar. This Court, however, finds the reasoning of the Tenth Circuit in *Guidry* to be persuasive, especially when viewed in conjunction with the broad reach of ERISA's protection imposed by the Supreme Court in its *Guidry* decision.

Both the District Court and the Court of Appeals presumed that [§ 1056(d)(1)] of ERISA erects a general bar to garnishment of pension benefits from plans covered by the Act. This Court, also, indicated as much, although in dictum, in

*Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825[, 108 S.Ct. 2182, 100 L.Ed.2d 836] (1988). In *Mackey* the Court held that ERISA does *not* bar the garnishment of welfare (*e.g.,* vacation) benefits. In reaching that conclusion, it noted that [§ 1056(d)(1)] proscribes the assignment or alienation of *pension* plan benefits, but that no comparable provision applies to ERISA *welfare* benefit plans. *Id.,* at 836[, 108 S.Ct. 2182] .... It reasoned that "when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans." *Id.,* at 837[, 108 S.Ct. 2182] .... The view that the statutory restrictions on assignment or alienation of pension benefits apply to garnishment is consistent with applicable administrative regulations, with the relevant legislative history, and with the views of other federal courts. It is also consonant with other statutory provisions designed to safeguard retirement income. We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case. That remedy is therefore prohibited by [§ 1056(d)(1)] unless some exception to the general statutory ban is applicable.

*Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S. 365, 371–72, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). The Supreme Court did not find any exception to ERISA's ban on assignment or alienation of qualified funds nor did it find that any equitable exception should be applied.

Nor do we think it appropriate to approve any generalized equitable excep-

tion—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. [Section 1056(d)(1)] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). The Sixth Circuit, while citing *Guidry*, took note of the Supreme Court's broad interpretation of ERISA protections and pointed out that the "Supreme Court appears to have drawn a bright line rule concerning the alienability of pension benefits: they may not be alienated either voluntarily or involuntarily, inside or outside of bankruptcy, or for equitable reasons." *McGraw v. So-*

*ciety Bank & Trust (In re Bell & Beckwith)*, 5 F.3d 150, 152 (6th Cir.1993).[4]

## CONCLUSION

Based upon the foregoing this Court finds that while the Funds remained in the custody and control of the administrator of the Plan, those Funds retained their protection under ERISA. Accordingly, the Funds are not property of debtor's chapter 7 bankruptcy estate pursuant to § 541(c)(2) of the Bankruptcy Code and need not be turned over to the chapter 7 trustee. Judgment will be entered in favor of defendants and against plaintiff-trustee in a separate pleading to be entered in this proceeding.

---

**4.** In the *Bell & Beckwith* case the Sixth Circuit was asked to address the propriety of the pension benefits.

> In neither *Guidry* nor *Patterson* was the propriety of pension contributions at issue. Here, according to [the bankruptcy trustee], the district court, rather than carving out an equitable exception to ERISA, simply said that any contributions made on behalf of [the partners] in violation of the net income requirement of the plan would be void *ab initio*. Since void, they never became a part of the plan, and so were not being alienated within the contemplation of the ERISA prohibition. [The bankruptcy trustee] therefore contends that the policy concerns of *Guidry* and *Patterson* are not implicated in the present case. We agree. What is unique about the plan in this case is that it is a profit-sharing plan, where the terms of the plan comport with shared liability concepts of partnership law by providing that money would be available for

> making contributions to the plan on behalf of the partners only when the partnership could lay claim to net income. Because the plan expressly limited contributions to being made out of [the partnership's] net income, contributions fraudulently made on behalf of partners, or induced by a partner's fraud, when there was no net income would be void *ab initio*. Since the partners had no right to expect contributions to the pension plan would be made on their behalf when the partnership had no profits, they are in no position to complain should those contributions be returned to the partnership's estate. Unlike the situations in *Patterson* and *Guidry*, there are no public policy considerations arguing that the contributions deserve to be shielded by ERISA from the reach of the creditors of [the partnership's] estate.

> *McGraw v. Society Bank & Trust (In re Bell & Beckwith)*, 5 F.3d 150, 153 (6th Cir.1993).