In re Fred Anderson WINKLER, SS# 242–72–4286 and Jewel Palmer WINKLER, SS# 245–86–8682, Debtors/Appellants,

v.

J. Samuel GORHAM, III, Trustee in Bankruptcy for Fred Anderson Winkler and wife Jewel Palmer Winkler, Trustee/Appellee.

No. 5:92CV122–MU.
Bankruptcy No. ST–B–90–50319.

United States District Court,
W.D. North Carolina,
Statesville Division.

March 8, 1994.

H. Clinton Cheshire, Hickory, NC, for debtors.

J. Samuel Gorham, III, Trustee, Gaither, Gorham & Crone, Hickory, NC, for appellee.

## ORDER

MULLEN, District Judge.

The Trustee in this Chapter 7 case moved to abandon the estate's claim to Fred A. Winkler's interest in certain proceeds due to be paid from a qualified defined contribution pension plan. The motion was denied and the Bankruptcy Judge ordered the proceeds to be paid to the bankruptcy estate. The issue before the court is whether Mr. Winkler's interest in the proceeds of the defined contribution pension plan is an asset of the bankruptcy estate. For the reasons stated herein, the order of the Bankruptcy Judge is reversed.

## I.

The debtors, Jewel and Fred Winkler, filed a voluntary joint Petition under Chapter 7 of the Bankruptcy Code on July 2, 1990 (hereinafter "Petition"). Prior to the filing of the Petition, Fred Winkler worked for several years as an employee of TSG Incorporated (successor corporation to Synthetics Finishing of North Carolina, Inc., hereinafter "TSG"). While an employee at TSG, Fred Winkler participated in and made contributions to the company profit sharing plan, which plan apparently satisfied all applicable requirements of the Employee Retirement Income Security Act of 1974 (hereinafter "the Plan"). (Order of Judge Wooten dated January 27, 1993.)

At the time of the filing of the Petition the male debtor's interest in the Plan was in an amount in excess of $30,000. The exact amount of Mr. Winkler's present interest is unknown. (Order of Judge Wooten dated January 27, 1993.) Prior to filing the Petition, the male debtor's employment was terminated at TSG. (Order of Judge Wooten dated January 27, 1993.) Since the filing of the Petition TSG has terminated the Plan and is holding the male debtor's interest pending direction from the court. (Order of Judge Wooten dated January 27, 1993.)

The Plan provided for Participant Contribution Accounts (Plan, Section 1.20 [citing Section 3.2 which is not in the record] ) and Company Contribution Accounts (Plan, Section 1.8 [citing apparently erroneously Section 4.3 which controls allocation of forfeitures.] )

Under the terms of the Plan, employees "shall cease to participate in the Plan on the date on which he retires or his employment with the company otherwise terminates for any reason." (Plan, Section 2.3.) Should such a termination occur, the pertinent part of the Plan is Section 6.3, entitled *"Determination of Benefits Upon Termination of Employment,"* which provides that the participant has a 100 per cent vested interest in his Participant Contribution Account and is vested in a portion of his Company Contribution Account in accordance with a graded vesting schedule contained in Section 6.4. The total amount so determined is required to be paid no later than three years from the date of participant's termination of employment.

Section 6.7 provides that a former participant may elect either a lump sum payment or installments over a period certain, but if no election is made the payment will be in a lump sum. Distributions are to commence pursuant to Section 6.6 as soon as practicable after termination of employment unless the plan committee elects to defer the commencement of any distribution "occurring by reason of a participant's termination of employment under Section 6.3 to a subsequent date."

The Plan also defines Former Participant in Section 1.16 as "any person who was at one time a participant but who is no longer a participant and who has not yet received a complete distribution of his account from the Plan."

The Plan calls for quarterly valuation of Participant's Accounts (Section 1.24), and settlement of Participant's Accounts based on the quarterly revaluation date "coincident with or immediately preceding payment." (Section 4.4)

Finally, Section 11.2 provides in pertinent part that no benefit or interest available hereunder shall be subject to assignment or alienation, either voluntarily or involuntarily.

The record is silent as to whether Mr. Winkler made any election regarding lump sum or installment distributions.

## II.

"The Bankruptcy Code excludes from the bankruptcy estate property of the debtor that is subject to a restriction on transfer enforceable under 'applicable nonbankruptcy law.' 11 U.S.C. § 541(c)(2)." *Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2245, 119 L.Ed.2d 519 (1992). In *Shumate,* the Supreme Court determined an anti-alienation provision contained in an ERISA-qualified pension plan constituted a restriction on transfer enforceable under applicable bankruptcy law; a debtor may exclude his interest in such a plan from the property of the bankruptcy estate.

730

This court agrees with the bankruptcy court's finding that the proceeds were contained in an ERISA-qualified pension plan. Therefore, the question before this court is "When did the debtor lose the protection provided by the plan's anti-alienation provision."

 This court looks only at the point in time in which the debtor filed the petition. This court will not look to post-petition distributions of plan proceeds to determine whether they are still plan assets as the appellee suggests, citing *Vellis v. Kardanis,* 949 F.2d 78 (3rd Cir.1991). To do so would never allow the debtor to emerge from bankruptcy, as creditors would continually attempt to identify future distributions as belonging to the bankruptcy estate. If this situation were allowed to occur, the Supreme Court's decision in *Shumate* would not "ensure that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status." *Patterson v. Shumate,* —— U.S. at ——, 112 S.Ct. 2242 at 2249.

The bankruptcy trustee would have this court hold that the debtor loses the protection of the anti-alienation provision upon termination of employment. Since the debtor was terminated from his employment before filing for bankruptcy, a holding that the debtor loses the protection of the anti-alienation provision upon termination of employment would result in the payment of the proceeds of the plan to the bankruptcy estate.

The debtor would have this court hold that the debtor retains the protection of the anti-alienation provision until receipt of the proceeds from the plan. Since the proceeds were not released at the time of the filing of the petition, a holding that the debtor retains the protection of the anti-alienation provision until receipt of the funds would result in the retention of the funds by the debtor.

At the time of the filing of the bankruptcy petition, the debtor had no control over the disposition of his portion of the plan proceeds. The debtor may have requested the funds immediately in a lump sum payment, yet the trustee had the discretion to delay the distribution of the proceeds for up to three years. Until the distribution is actually made the trustee, not the debtor, had

control of the debtor's portion of the plan proceeds. Therefore, the debtor loses the protection provided by the plan's anti-alienation provision only when the debtor has control of the proceeds. This occurs at the point at which the proceeds are distributed.

In this case, the proceeds were not distributed at the time of the filing of the bankruptcy petition. Therefore, these proceeds were part of the plan, were covered by the anti-alienation provision of the plan, and should not be distributed to the bankruptcy estate.

**IT IS THEREFORE ORDERED** that the final judgment of the bankruptcy court is **REVERSED.**

**IT IS FURTHER ORDERED** that any proceeds paid from the plan to the bankruptcy estate be returned to the debtor. Proceeds of the plan that are still under plan control shall be distributed to the debtor in accordance with the procedures and schedule outlined in the plan.