**In re John Edward BARTHOLOMEW, Jr., Debtor.**

**Bankruptcy No. 97–51295.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Oct. 17, 1997.

Susan L. Rhiel, Thompson Hine & Flory, L.L.P., Columbus, OH, Special Counsel to the Trustee.

Myron N. Terlecky, Strip, Fargo, Schulman & Hoppers Co., L.P.A., Columbus, OH, Chapter 7 Trustee.

Robert E. Bardwell, Jr., Ricketts & Onda, Columbus, OH, for Debtor.

## OPINION AND ORDER ON TRUSTEE'S OBJECTIONS TO EXEMPTIONS

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on two objections by the trustee in bankruptcy to exemptions claimed by the debtor. The property at issue includes a certain payment in the amount of $147,720.95 ("Severance Payment") and the debtor's interest in a retirement plan in the amount of $332,308.25 ("Retirement Plan Benefit"). The matters were heard by the Court on July 15, 1997.

The Court has jurisdiction in these contested matters under 28 U.S.C. § 1334 and the General Order of Reference previously entered in this district. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (E).

## I. FACTUAL BACKGROUND

The parties have stipulated to certain relevant facts and the Court finds certain facts, as follows:

After being employed by Columbia Gas for 32 years, in December 1996, the Debtor was notified that his position was being eliminated.

On January 12, 1997, the debtor executed a Notification of Intention to Retire and on January 14, 1997, the Benefits Supervisor of Columbia Gas of Ohio ("Columbia") acknowledged receipt of that notice.

On or about that same date, James R. Lee, Senior Vice President of Columbia, wrote to the debtor and set forth the options available to him relating to the termination of his employment. For purposes of these contested matters, the relevant options were (1) a salary continuation payment provision; and (2) disposition of his interest in Columbia's retirement plan.

### A. The Severance Payment

Lee's letter set forth Columbia's offer of salary continuation for a limited period. That offer was contingent upon the debtor's execution of a release of all civil, statutory and equitable claims against Columbia. The letter further provided three options for such salary continuation.

On February 13, 1997, the debtor executed the Acceptance and Election attached to Lee's letter and elected the option of a lump sum payment of his salary continuation in the amount of $125,074.30. This payment was based upon 52 weeks of pay at the debtor's current monthly salary of $8,017.58 plus 30% for benefit costs. To implement this election the Benefits Supervisor requested a Payroll Change Report for the salary continuation amount of $125,074.30 plus payment of $14,524.07 for unused and accrued vacation pay. The total payment requested was $147,-

720.95.[1] The salary continuation portion of the Severance Payment was not made pursuant to Columbia's 1996 Employee Benefits Handbook nor the Retirement Income Plan for Columbia Gas System Companies, but was offered only to the debtor and to certain other employees of Columbia whose jobs were being eliminated.

The debtor filed his petition under chapter 7 of the Bankruptcy Code on February 13, 1997. On February 28, 1997, a check was issued to him in the amount of $83,603.12, representing the salary continuation payment, the vacation pay, current wages and a small life insurance premium rebate. The amount of the check is a net amount after deductions for taxes and other miscellaneous items.

### B. The Retirement Plan Benefit

The Acceptance and Election the debtor executed on February 13, 1997 also contained an election to retire on March 1, 1997.

March 1, 1997 was the earliest date the debtor could elect to retire since Section 2.13 of the Columbia Employees Benefits Handbook defines an "Early Retirement Date" as "the first day of any month before a participant's Normal Retirement Date on which he elects to retire."

On January 23, 1997, Sharon Dunfee of Columbia had prepared a form captioned Retirement Income Plan Estimates of Retirement Income and Option Election which set forth alternate forms of retirement payments the debtor could elect. On February 4, 1997, the debtor executed a retirement income election and chose a lump sum distribution. He also signed a form electing a direct rollover of that entire lump sum distribution of his interest in Columbia's Retirement Income Plan. On February 6, 1997 the debtor executed a Request for Direct Rollover to American Express Financial Advisors IRA. That request gave direct rollover instructions to liquidate all of his interest in the Columbia Retirement Income Plan and to make the check payable to American Express Trust Company, as custodian of his proposed IRA.

Columbia's 1996 Employee Benefits Handbook further provides, however, under special rules set up by Columbia's retirement board, that an employee's election of a lump sum distribution is subject to proof of "satisfactory evidence of good health with a normal life expectancy of a person of like age and sex when the retirement board acts on the request." To satisfy this requirement Michael R. Ports, M.D. on February 7, 1997 wrote to Columbia's retirement board and represented that, as the debtor's physician, on February 7, 1997, he had conducted a complete physical examination of the debtor and reviewed his medical history and records. As a result of the examination, it was Dr. Port's opinion that the debtor was in good physical and mental health and had a normal life expectancy of a person his age and sex.

The debtor filed his petition under chapter 7 of the Bankruptcy Code on February 13, 1997. Prior to that date he had taken all of the steps necessary to obtain his interest in the Retirement Plan Benefits.

The Retirement Income Plan for Columbia Gas System Employees is subject to the provisions of Title I of ERISA, is tax qualified under § 401(a) of the Internal Revenue Code, and includes antialienation provisions.

On March 1, 1997, a check in the amount of $273,090.11, representing the Retirement Plan Benefits, was issued to American Express Trust Company as Trustee of the individual retirement account of John E. Bartholomew, Jr. Previously, in connection with his divorce, the debtor's ex-spouse had received a distribution from the Columbia Gas Retirement Income Plan totalling $129,434.47.

## II. DISCUSSION OF LEGAL ISSUES

### A. The Severance Payment

#### 1. Property of the Estate

It is not contested and the parties apparently agree that the portion of the $83,603.12 check paid to the debtor on February 28, 1997 attributable to the salary continuation benefit is property of the debtor's bankruptcy estate. The portions of that payment attributable to wages or vacation pay are not property of the bankruptcy estate to the

---

**1.** This total also included current wages and a life insurance premium rebate.

extent such amounts represent postpetition wages or vacation pay, but are property of the estate as they relate to prepetition wages or vacation pay. The portion of the payment representing the insurance premium rebate was not presented to the Court for determination.

### 2. Exemption Issues

The debtor has claimed an exemption for the entire gross amount of $147,720.95 pursuant to Ohio Rev.Code § 2329.66(A)(10)(b). At the hearing on this matter, that exemption claim was orally clarified to specify the source for the exemptions as Ohio Revised Code § 2329.66(A)(13)(b) for the prepetition wages, Ohio Revised Code § 2329.66(A)(12)(d) for the vacation pay and Ohio Revised Code § 2329.66(A)(10)(b) for the lump sum salary continuation payment.

### (a) The Wage Exemption

■ Ohio Revised Code § 2329.66(A)(13)(b) provides an exemption for prepetition wages to the extent of "75% of the disposable earnings owed to the person." "Disposable earnings" under that statute mean net earnings. *See* Ohio Revised Code § 2329.66(B)(1). Therefore, 75% of the amount included in the $83,603.12 payment attributable to prepetition wages may properly be exempted from the claims of the debtor's creditors in this case.

### (b) The Vacation Pay Exemption

■ The statute asserted for the vacation pay, Ohio Revised Code § 2329.66(A)(12)(d), gives an Ohio debtor an exemption from execution for "A payment in compensation for loss of future earnings of the person or an individual of whom the person is or was a dependent, to the extent reasonably necessary for the support of the debtor aid any of the debtor's dependents."

■ There is very little case law interpreting this statute in Ohio courts or a similar provision in 11 U.S.C. § 522(d)(11)(E). At least it can be said, however, that any such exemption does not include future earnings, but only payments which are being made to the debtor as compensation for the loss of

future earnings. *In re Carson,* 82 B.R. 847 (Bankr.S.D.Ohio 1987).

The gross amount of $14,524.07 included in the Severance Payment was designated as "pay-in-lieu." Apparently it represents 314 hours of vacation pay. The Payroll Change Report which requested the payment identifies that amount as 280 hours of unused vacation time for 1997 and 34 hours of unused vacation time for 1998. The debtor, because of his more than 30 years of employment, earned vacation at the rate of five weeks per year. That time was earned in the year prior to its being taken. It is unclear what amount of previously earned vacation could be carried over to a following year. With the exception of the small amount of vacation time accrued between the bankruptcy filing date of February 13, 1997 and the end of February 1997 when his vacation accruals ceased, the payment represents vacation time previously earned, but not taken. Such entitlement by definition could not be a payment made in compensation for future earnings. The small accrual after the bankruptcy filing has been previously found to be excluded from the bankruptcy estate and, therefore, not amenable to any claim of exemption.

Consistent with these findings, the debtor's oral claim of exemption for vacation pay is not allowable under Ohio Revised Code § 2329.66(A)(12)(d).

### (c) Exemption for the Salary Continuation Benefit

■ Finally, the debtor relies on Ohio Revised Code § 2329.66(A)(10)(b) for exemption of the portion of the $83,603.12 payment attributable to the salary continuation benefit. That statute, in relevant part, exempts from the claims of creditors:

Except as provided in sections 3111.23 and 3113.21 of the Revised Code, the person's right to receive a payment under any pension, annuity, or similar plan or contract, not including a payment from a stock bonus or profit-sharing plan or a payment included in division (A)(6)(b) or (10)(a) of this section, on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the sup-

port of the person and any of the person's dependents . . .

The trustee opposes that exemption on the ground that the portion of the Severance Payment which relates to the lump sum salary continuation payment was not made under "any pension, annuity, or similar plan or contract" as required by the language of the statute. Rather, as expressed in the letter of January 14, 1997 to the debtor from Columbia's vice-president, the payment was made to secure an agreement from the debtor of confidentiality and of waiver of any claims against the company relating to the termination of his employment. The Columbia Employee Benefits Handbook does not set forth any such entitlements to payment and neither the debtor nor the trustee presented evidence of any other contract out of which the entitlement to such a payment arose. There is reference in the letter, however, to a "program" under which certain of the employees whose jobs were terminated were selected to receive salary continuation payments.

As support for his exemption claim the debtor relies on two Ohio bankruptcy cases, *In re Phillips*, 45 B.R. 529 (Bankr.N.D.Ohio 1984) and *In re Bell*, 80 B.R. 97 (Bankr.N.D.Ohio 1987).

The *Bell* case arose in the context of an objection to discharge. It relies on the *Phillips* decision decided by another judge of the same court. The *Bell* court determined that where a severance payment was funded entirely by the debtor's employer, was distributed pursuant to a union contract under a definite formula based upon length of service and was unavailable to the debtor prior to distribution, the debtor had a right to receive a payment under a plan similar to a pension or annuity plan. Therefore, the debtor could exempt that right under Ohio Revised Code § 2329.66(A)(10)(b) to the extent the payments were reasonably necessary for the debtor's support. *Bell* at 98.

Likewise, the *Phillips* court, when presented with a debtor's right to severance payments under an employee benefit plan, which payments were determined by a definite formula and were not subject to any control by the debtor prior to payment, decided that the payments were similar to a pension or annuity plan. Therefore, the payments were exempt under Ohio Revised Code § 2329.66(A)(10)(b). *Phillips* at 531–533.

The trustee argues that the *Bell* and *Phillips* cases are not instructive because those payments were made pursuant to a plan or contract and were not paid in a lump sum. There is case law in Ohio that the lump sum nature of a payment may make it more like a profit-sharing plan which is specifically not exempt. *See In the Matter of Kelley*, 31 B.R. 786 (Bankr.N.D.Ohio 1983). If the amount to be contributed to the plan and to the employee is discretionary with the employer and the payout is, therefore, not a defined benefit plan, the arrangement is like a profit-sharing plan and is not exempt. *Kelley* at 788. If the payment is not periodically payable at a predetermined frequency, it is not a pension or an annuity. *See also In re Talbert*, 15 B.R. 536 (Bankr.W.D.La.1981).

The portion of the Severance Payment attributable to the salary continuation benefit had two components. It was to assist the debtor in supporting himself while he located another job because Columbia recognized that a long-time employee over the age of fifty at the time his job was eliminated could have difficulty finding suitable reemployment at a comparable wage. The payment also was to settle by a waiver of rights any claim the debtor might have against Columbia under the age discrimination laws. The amounts of the payment are not apportioned and no evidence of proper apportion was introduced.

Even if an apportion had been shown, the debtor's claim of exemption is not sustainable. Ohio Revised Code § 2329.66(A)(10)(b) does not provide an exemption for the debtor's right to the salary continuation benefit. Neither the language of the statute nor the case law relied upon support the claim of emption. The payment did not arise "in connection with a pension, annuity or similar plan or contract" and was not a right "on account of illness, disability, death, age, or length of service." In sum, Ohio Revised Code § 2329.66(A)(10)(b) does not provide

authority to remove the right to this payment from the bankruptcy estate.

### B. The Retirement Plan Benefit

■ The trustee also has objected to the debtor's claim of exemption for his interest in the Retirement Plan Benefit. In response the debtor asserted that this interest is not part of his bankruptcy estate at all.

Unless a specific statutory exception applies, any interest a debtor has in property comes into his bankruptcy estate pursuant to § 541(a) of the Bankruptcy Code. The debtor contends, however, that the provision in § 541(c)(2) [2] applies to his interest in the Retirement Plan Benefit. As support for that position he relies on the ERISA qualified status of Columbia's Retirement Plan and the holding of *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

The trustee argues that *Patterson* is not dispositive of the issue, however, and that the particular facts which exist in this case cause the debtor's interest in the Retirement Plan Benefit to be included in his bankruptcy estate. *Patterson* held that the antialienation clause required to be present in ERISA qualified plans can be an enforceable restriction on transfer under "applicable nonbankruptcy law" under the plain language of § 541(c)(2). 504 U.S. at 759, 112 S.Ct. at 2247. The trustee, however, asserts that because the debtor had taken all steps necessary to withdraw his funds prepetition, the funds no longer were insulated from the claims of his creditors by the antialienation provision in the plan and, therefore, § 541(c)(2) does not apply.

The Court's research has not found any case with exactly the same facts as are present for this decision. There are, however, nonbankruptcy cases which are instructive in the balancing of creditors' rights and the ERISA restrictions on transfer. There also are exemption cases which discuss the effect of the bankruptcy filing date on the characterization of property which subsequently undergoes a change in status.

In the ERISA area the Court of Appeals for the Eleventh Circuit has held that a judgment creditor cannot garnish a beneficiary's interest in a pension plan fund even though the plan was being terminated and the beneficiaries were scheduled to receive lump sum payments. *Travelers Insurance Cos. v. Fountain City Federal Credit Union*, 889 F.2d 264 (11th Cir.1989). Likewise, the Court of Appeals for the Fourth Circuit has held that a judgment creditor could not reach the interest of a fully vested plan beneficiary who had been terminated from his job before retirement age. *Tenneco Inc. v. First Va. Bank of Tidewater*, 698 F.2d 688 (4th Cir. 1983). The beneficiary in *Tenneco* had the right to a payout within a reasonable time of his request and had recently taken $37,000 in a lump sum payment. The court ruled that the $5,000 remaining in the plan which had not yet been specifically requested could not be attached by the judgment creditor. The lump sum feature of the expected withdrawal made no difference in the result. *Tenneco* at 690.

This Court realizes that the debtor in this case had requested his distribution pre-petition. A later Fourth Circuit case, *Smith v. Mirman*, 749 F.2d 181 (1984) is instructive in that regard. In *Mirman* a beneficiary had assigned portions of his interest in an ERISA qualified plan after the corporation maintaining the plan had terminated it. After the beneficiary became a debtor in an involuntary bankruptcy case, the trustee of his bankruptcy estate had the assignments set aside. *Id.* The appeals court held that the statutory requirement for non-alienation applies to a plan's assets until the actual distribution is made. *Id.* at 184. *See also Winkler v. Gorham (In re Winkler)*, 164 B.R. 728 (W.D.N.C.1994), *aff'd* 46 F.3d 1130 (4th Cir.1995). These cases appear to indicate that the antialienation clause is enforceable against creditors until the funds are paid out.

The Court understands that the trustee does not seek and has not sought any recovery from the Retirement Plan itself. It also can be argued that the antialienation provi-

---

**2.** "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is en-

forceable in a case under this title." 11 U.S.C. § 541(c)(2).

sions primarily protect the plan and do not protect a beneficiary once the benefit has been paid out. *See Guidry v. Sheet Metal Workers National Pension Fund,* 39 F.3d 1078 (10th Cir.1994). The issue, however, is the time at which the question must be determined.

■ Some courts, in deciding cases in the exemption area, have held that property which is properly exempted from the bankruptcy estate as of the date of the bankruptcy petition is not affected by a subsequent change in the form of that property, even if such change would have rendered the property non-exempt had that been its form at the time of the bankruptcy filing. *See e.g. In re Walston,* 190 B.R. 855 (Bankr.S.D.Ill. 1996); *In re Crump,* 2 B.R. 222 (Bankr. S.D.Fla.1980); and *Lowe v. Yochem (In re Reed),* 184 B.R. 733 (Bankr.W.D.Tex.1995). This Court agrees with those cases and believes no reason exists to change the logic of those holdings for issues affecting property of the estate. If the property is excluded from the bankruptcy estate at the time of the bankruptcy filing, a subsequent change in its form does not bring it into the estate unless another provision of § 541(a) would capture it as a postpetition asset. *See Magill v. Newman,* 903 F.2d 1150 (7th Cir.1990).

The debtor's interest in the Retirement Plan Benefit is not like a contingent right which has come into the bankruptcy estate and has ripened once the contingency has occurred postpetition. This is an interest which at the time of the bankruptcy filing, according to the language used in *Patterson,* 504 U.S. at 765, 112 S.Ct. at 2250, is *excluded* from the estate because it was subject to a restriction on transfer which was enforceable under nonbankruptcy law.[3]

The thrust of these two lines of cases causes this Court to find that the antialienation provision of Columbia's ERISA-qualified Retirement Plan protected the debtor/beneficiary's interest in the Retirement Plan Benefit at the time he filed his bankruptcy petition. This is so even though he had taken steps to withdraw his interest for transfer to an IRA which is not similarly protected. Payment of his interest by check did not occur until after the bankruptcy filing date. Therefore, the debtor's interest in the Retirement Plan Benefit remained protected by an enforceable antialienation clause at the time of his bankruptcy filing. The subsequent change in the form of that interest to one which would have been property of the estate had that change occurred immediately before the bankruptcy filing does not bring the interest back into the estate. The result would be different if the subsequent change in the form of the interest had made that interest into one included in the estate through § 541(a)(5). The IRA does not come in through § 541(a)(5) and as it was initially excluded through § 541(c)(2), it also cannot come in through § 541(a)(6) or (a)(7). Accordingly, the debtor's interest in the Retirement Plan Benefit is not property of his bankruptcy estate.

Because the debtor's interest in Columbia's Retirement Plan is not property of his bankruptcy estate, the Court does not need to determine the extent to which such interest may be exempt pursuant to Ohio Revised Code § 2329.66(A)(10)(b).

### III. CONCLUSION

Based upon the foregoing, the trustee's objection to the debtor's claim of exemption is sustained as to the portions of the Severance Payment attributable either to prepetition vacation pay or to the salary continuation benefit. The trustee's objection is overruled as to amounts in the Severance Payment attributable to prepetition wages. The trustee's objection to the debtor's claim of exemption for his interest in the Retirement Plan Benefit is overruled on the basis that the debtor's interest is not property of the estate and, therefore, is not required to be exempted.

**IT IS SO ORDERED.**

---

3. *Patterson* just as easily could have held that such interests come into the bankruptcy estate subject to the transfer restriction. In that instance, once the transfer restriction ceased to be enforceable, the debtor's interest would be available for creditors. The *Patterson* court, however, chose the term exclusion. See *Patterson,* 504 U.S. at 765, 112 S.Ct. at 2250. *Also see Nigro v. Pierce (In re Pierce),* 1994 WL 266381 (Bankr. W.D.Pa.1994).