*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 11b0003n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: EDWIN D. BAILEY and JAMIE S. BAILEY, | ) ) ) | |
| Debtors. | ) ) ) | No. 10-8042 |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division
Case No. 05-41609.

Decided and Filed: March 9, 2011

Before: BOSWELL, FULTON, and McIVOR, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Bruce M. Broyles, BRUCE M. BROYLES, CO., Boardman, Ohio, for Appellee. Edwin D. Bailey, Jamie S. Bailey, Niles, Ohio, *pro se*.

_____

**OPINION**
_____

G. HARVEY BOSWELL, Bankruptcy Appellate Panel Judge. In this appeal, Edwin D. Bailey ("Bailey") and Jamie S. Bailey (collectively "Debtors") appeal an order of the bankruptcy court sustaining the Chapter 7 Trustee's ("Trustee") objection to the Debtors' "Statement of Intention; Amendment to Schedules by Adding Exemption to Schedule C." Debtors' amended Schedule C sought to assert an exemption under Ohio Revised Code § 2329.66(A)(12)(d) in proceeds resulting from the settlement of a state court lawsuit filed against the Ohio Department of

Transportation for reinstatement of Bailey's job. For the reasons that follow, we affirm the order of the bankruptcy court.

## I.    ISSUE ON APPEAL

Whether the bankruptcy court erred when it found that the Debtors are not entitled to claim the proceeds of the settlement of Bailey's wrongful termination suit with the Ohio Department of Transportation as exempt under Ohio Revised Code § 2329.66(A)(12)(d).

## II.    JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1484, 1497 (1989) (citations omitted). An order sustaining an objection to a debtor's claim of exemption is a final order for purposes of appeal. *See Menninger v. Schramm (In re Schramm)*, 431 B.R. 397, 399 (B.A.P. 6th Cir. 2010).

The bankruptcy court's conclusions of law are reviewed *de novo*. *Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470, 474 (6th Cir. 2010). A bankruptcy court's application or interpretation of state law is a conclusion of law. *In re Schramm*, 431 B.R. at 399. "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted). The court's findings of fact are reviewed under the clearly erroneous standard. *See Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

## III.    FACTS

Edwin D. Bailey ("Bailey") was employed by the Ohio Department of Transportation ("ODOT") from 1980 to 1999.  He was also represented by, and served as a steward for, the Ohio Civil Service Employees Association, Local 11, AFSCME ("OCSEA").  ODOT terminated Bailey's employment in 1998 for allegedly applying for sick leave under false pretenses and for unauthorized absence.  OCSEA pursued a grievance on behalf of Bailey regarding the termination of his employment.  On September 20, 1999, Bailey filed a criminal charge for false imprisonment against Matthew Long, an ODOT investigator who investigated Bailey in June 1998, to determine whether he was improperly using sick time.

Following several postponements, the parties arbitrated Bailey's grievance on September 23, 1999.  The arbitration took place at a State Highway Patrol office in Garfield Heights, Ohio, where, due to the presence of uniformed and armed officers, Bailey alleged that he feared he would be arrested if he did not agree to a settlement.  The parties eventually agreed to settle the grievance for $15,000 with an additional $2,000 to be paid to Bailey in exchange for dropping the criminal charges against Matthew Long.

The final settlement agreement was entered into on September 23, 1999, among Bailey, OCSEA, and ODOT.  The final settlement provided that Bailey would resign effective September 23, 1999, with the period between termination of his employment and resignation to be treated as administrative leave without pay, Bailey would drop the charges against Long, potential employers would be given a neutral reference, Bailey would receive a lump sum payment of $17,000, and ODOT would not oppose Bailey's application for disability retirement.  Bailey signed the "waiver of individual rights" clause contained in the grievance settlement agreement and submitted his resignation.  He received disability retirement benefits effective August 1, 1998.

On December 23, 1999, Bailey filed a complaint with the Cuyahoga County Court of Common Pleas ("Cuyahoga Court") against ODOT seeking to vacate the settlement agreement.  While this lawsuit was timely filed, Bailey voluntarily dismissed it on June 22, 2001.  On July 10, 2001, Bailey re-filed his complaint to vacate the settlement agreement in the Cuyahoga Court.

3

ODOT moved to dismiss the case, arguing that Bailey's claim was within the exclusive jurisdiction of the State Employment Relations Board. The Cuyahoga Court agreed and dismissed the case. Bailey appealed that ruling, and it was ultimately reversed and remanded by the Court of Appeals for the Eighth Appellate District of Ohio ("Eighth District Court").

Following remand of the matter and a bench trial, the Cuyahoga Court vacated the settlement agreement finding that the agreement was the result of an arbitration proceeding that was procured through undue means and ordered that a new arbitration be conducted between ODOT and OCSEA. ODOT appealed the Cuyahoga Court decision to the Eighth District Court. On November 16, 2006, the Eighth District Court issued a decision reversing and vacating the order of the Cuyahoga Court. The Eighth District Court found that the Cuyahoga Court lacked subject matter jurisdiction because ODOT and its director may only be sued in the Franklin County Court of Common Pleas. Bailey's case was, therefore, dismissed and he did not further appeal the decision of the Eighth District Court.

On May 29, 2007, Bailey again filed suit against ODOT, this time in the Franklin County Court of Common Pleas. ODOT moved to dismiss the case on the grounds that the court lacked jurisdiction and that the claims were time barred. The court agreed that the claims were time barred and granted the motion to dismiss. Bailey appealed the dismissal order to the Court of Appeals for the Tenth District which affirmed the dismissal on March 31, 2008.

On December 22, 2008, Bailey filed another suit against ODOT in the Franklin County Court asserting a breach of contract claim alleging a violation of the OCSEA collective bargaining agreement when ODOT terminated his employment. This suit also sought reinstatement, back pay and benefits. ODOT moved for summary judgment. On June 11, 2009, the Franklin County Court granted summary judgment in favor of ODOT. Bailey appealed this order to the Court of Appeals for the Tenth District.

Bailey and his wife, Jamie S. Bailey ("Debtors"), filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 28, 2005. Listed on Schedule B at line 20 was a "Lawsuit against Ohio Department of Transportation in Cuyahoga County Common Pleas Court

4

Case No. DV-01-443852 - for reinstatement of job." The current market value of this claim was noted as "NONE." The Debtors' discharge was entered on July 31, 2005.

On February 12, 2009, the Trustee filed a motion for turnover seeking an order directing ODOT to turn over the $17,000 settlement. The Debtors objected and the Trustee ultimately withdrew the motion for turnover. On September 25, 2009, the Trustee filed a motion to approve a compromise between Bailey and ODOT whereby the Trustee would receive $17,000 in exchange for a full and complete release of any and all of Bailey's pre-petition claims against ODOT. The Trustee asserted that the settlement was in the best interests of the estate and its creditors. The Debtors objected to the Trustee's motion to compromise, and the bankruptcy court held an evidentiary hearing on November 24, 2009, at which the Debtors appeared *pro se*.

At the start of the hearing, the Debtors agreed to stipulate to a number of facts: that they filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 28, 2005; that Schedule B of their petition listed, on line 20, a "Lawsuit Against Ohio Department of Transportation in Cuyahoga County Common Pleas Court Case No. CV-01-443852 - for reinstatement of job"; that they listed the ODOT claim because it constituted an asset of the estate; and that they did not claim any exemption regarding the ODOT claim and no exemption was available to be claimed. Both Jack W. Decker ("Decker"), Assistant Attorney General for the Ohio Attorney General's Office, Employment Law Section, and Bailey testified. Bailey cross-examined Decker. He did not, however, ask any questions regarding how the amount of the settlement was determined or whether any portion of the settlement was attributed to future earnings.

On December 10, 2009, the bankruptcy court issued a memorandum opinion approving the settlement. The court held that the claim against ODOT constituted property of the estate and that the settlement was in the best interests of the creditors and the estate. The Debtors appealed the order approving the settlement to this Panel. On August 17, 2010, this Panel issued an order dismissing the Debtors' appeal for lack of standing to contest the handling of an estate asset. *See*

BAP Case No. 09-8077. The Debtors then filed a motion seeking reconsideration of that order which we subsequently denied.[1]

On April 1, 2010, the Debtors filed a "Statement of Intention; Amendment to Schedule by Adding Exemption to Schedule C," in which they asserted an exemption under Ohio Revised Code § 2329.66(A)(12)(6). The Debtors asserted that because their lawsuit against ODOT was "termed 'for reinstatement of job' " it should be construed as a claim for lost future earnings and the settlement of the suit should, therefore, be exempted. The Trustee objected to the Debtors' claim that the settlement with ODOT was exempt.

On May 13, 2010, the bankruptcy court held a hearing on the Debtors' claim of exemption. On May 18, 2010, the court issued its memorandum opinion and order sustaining the Trustee's objection based on two separate and independent reasons: (1) the Debtors stipulated that no exemption was available to be claimed regarding their claim against ODOT; and (2) the record contained no evidence to support an inference that any part of the settlement of the ODOT claim was based on or related to future earnings. The Debtors then filed a motion for reconsideration which was denied by the bankruptcy court. On June 15, 2010, the Debtors filed a timely notice of appeal to this Panel. *See* Fed. R. Bankr. P. 8002(b).

## IV. DISCUSSION

The Debtors' bankruptcy estate consists of their legal and equitable interests in all property. *See* 11 U.S.C. § 541(a)(1). The Bankruptcy Code permits debtors to exempt certain property from the estate. *See* 11 U.S.C. § 522. A state may choose whether its residents may use the federal exemptions set forth in § 522 or use its own state exemptions. *See* 11 U.S.C. § 522(b). Ohio has elected to opt-out of the federal exemptions and create its own set of bankruptcy exemptions. *See* Ohio Rev. Code § 2329.66. Exemptions are to be construed liberally in favor of the debtor. *See* *Daugherty v. Cent. Trust Co. of Ne. Ohio, N.A.*, 504 N.E.2d 1100, 1105 (Ohio 1986). As the objecting party, the burden is on the Trustee to establish by a preponderance of the evidence that the

---

[1] The Debtors have appealed the Panel's decision to the Sixth Circuit Court of Appeals. *See* Sixth Circuit Court of Appeal Case No. 10-4140.

6

exemption should not be allowed. Fed. R. Bankr. P. 4003(c); *Hamo v. Wilson* (*In re Hamo*), 233 B.R. 718, 723 (B.A.P. 6th Cir. 1999) (citation omitted). To meet this burden, the Trustee must produce "evidence which rebuts the *'prima facie* effect of the claim of exemption.' " *Lester v. Storey* (*In re Lester*), 141 B.R. 157, 161 (S.D. Ohio 1991) (citation omitted). Once such a rebuttal is made, the burden shifts to the Debtors to show that the exemption is in fact proper. *Id*.

The exemption at issue in this case is Ohio Revised Code § 2329.66(A)(12)(d), which provides, in pertinent part:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
>
> . . . .
>
> > (12) The person's right to receive, or moneys received during the preceding twelve calendar months from, any of the following:
> >
> > . . . .
> >
> > > (d) A payment in compensation for loss of future earnings of the person or an individual of whom the person is or was a dependent, to the extent reasonably necessary for the support of the debtor and any of the debtor's dependents.

The Debtors' arguments regarding this exemption are difficult to determine from their appellate brief as it is rambling and, at times, incomprehensible. However, the Panel believes three distinct arguments can be distilled from the Debtors' brief and the arguments Debtors made before the bankruptcy court at the hearing on the Trustee's objection to the exemption. The Panel paraphrases those arguments as follows:

A. At the hearing on the Trustee's motion to approve settlement of Bailey's suit against ODOT, the Debtors stipulated that they had no exemption regarding their

claim against ODOT based upon inaccurate information given to them by their former attorney and they should not, therefore, be bound by their earlier stipulation;

B. Approval of the compromise of Bailey's lawsuit against ODOT for reinstatement to his former position with full back pay and seniority prevents him from obtaining future earnings from ODOT and, therefore, the settlement proceeds are compensation for loss of future earnings; and

C. The Trustee failed to meet his burden of proving that the exemption should not be allowed because his objection stated only that the exemption is not applicable, and at the hearing on his objection he claimed only that the settlement agreement was not for future earnings.

The Panel shall address each of the Debtors' arguments as we understand them separately.

A.      *The Stipulation*

On November 25, 2009, the bankruptcy court held an evidentiary hearing on the Trustee's motion to approve a compromise between Bailey and ODOT whereby the Trustee would receive $17,000 in exchange for a full and complete release of any and all of Bailey's pre-petition claims against ODOT. At that hearing, the Debtors stipulated that they did not claim any exemption regarding the ODOT claim and no exemption was available to be claimed for the asset.

At the hearing on the Trustee's objection to exemption, the Debtors stated that while they did not "understand actually the meaning of the word stipulate as opposed to in a legal context," they "were agreeing at that time [they] believed [they] had absolutely no available exemptions . . . ." (Transcript of Exemption Hearing, May 13, 2010, Bankr. Ct. Docket #155, at 5.). The Debtors went on to explain to the bankruptcy court, as they do in their brief to this Panel, that the attorney representing them at the time they filed their petition for relief told them they had no exemptions in this asset, and it was not until they read the cases cited by the bankruptcy court in its memorandum opinion granting the motion to approve the compromise that they believed they had an exemption

8

in this asset. They concede, however, that no facts have changed since the time they stipulated to the fact that they had no available exemption.

Contrary to the Debtors' assertions, they are bound by their earlier stipulation in the prior hearing. *See Christian Legal Soc'y Chapter of The Univ. of Cal., Hastings College of Law v. Martinez*, 130 S. Ct. 2971, 2983 (2010). The Supreme Court has explained:

> "[Factual stipulations are] binding and conclusive . . . , and the facts stated are not subject to subsequent variation. So, the parties will not be permitted to deny the truth of the facts stated, . . . or to maintain a contention contrary to the agreed statement, . . . or to suggest, on appeal, that the facts were other than as stipulated or that any material fact was omitted. The burden is on the party seeking to recover to show his or her right from the facts actually stated." 83 C.J.S., Stipulations § 93 (2000) (footnotes omitted).

*Id.* Additionally, the Debtors may not avoid the consequences of their stipulation based upon their prior attorney's acts, omissions, or erroneous advice. *See Bailey v. Suhar* (*In re Bailey*), 380 B.R. 486, 491 (B.A.P. 6th Cir. 2008) (rejecting the attempt by these same Debtors to defend Trustee's turnover motion based upon alleged erroneous advice of their attorney that portion of tax refund was exempt) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390 (1962) ("a litigant is generally bound by the acts and omissions of his attorney"); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397, 113 S. Ct. 1489, 1499 (1993) ("clients are 'held accountable for the acts and omissions' of their chosen counsel.")). The bankruptcy court did not err in sustaining the Trustee's objection to the Debtors' claim of exemption because the Debtors are bound by their earlier stipulation.

Additionally, although not raised or considered by the bankruptcy court or the parties, we find that judicial estoppel also applies to prevent the Debtors from claiming this exemption at this juncture. *See United States v. Henderson*, 626 F.3d 326, 334 (6th Cir. 2010) (" 'A decision [of a lower court] must be affirmed if correct for any reason, including a reason not considered by the lower court.' " (citation omitted)). The Sixth Circuit Court of Appeals has recently explained the equitable doctrine of judicial estoppel:

9

> The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. This doctrine is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.
>
> In the bankruptcy context, this court has previously noted that judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition. Furthermore [this court] noted that [] judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence.

*White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (internal citations and quotations omitted.)

At the hearing on the Trustee's motion to approve compromise, the Debtors stipulated, or, in their words, "agreed," that they were claiming no exemption and had none available. They are clearly now asserting a contrary position. Additionally, the bankruptcy court incorporated that stipulation into its memorandum opinion approving the settlement. Finally, the Debtors' asserted reliance on their attorney's statement that they had no available exemption does not prevent the application of judicial estoppel here. The Sixth Circuit has rejected reliance on an attorney's advice or omissions as a bar to the application of judicial estoppel finding no reason to "deviate 'from the general rule . . . that litigants are bound by the actions of their attorneys.' " *Id*. at 483-84 (citation omitted). The doctrine of judicial estoppel is designed to prevent just the type of action taken by the Debtors in this case. *See Pikeville Energy Grp., LLC v. Spradlin* (*In re Alma Energy, Inc.*), 439 B.R. 92, 99 (B.A.P. 6th Cir. 2010) ("Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one.") (internal quotation marks and citation omitted).

B.      *Compensation for Loss of Future Earnings*

The exemption under Ohio Revised Code § 2329.66(A)(12)(d) exempts payments made to the debtor as compensation for the loss of future earnings. *In re Bartholomew*, 214 B.R. 322, 325 (Bankr. S.D. Ohio 1997) (citing *In re Carson*, 82 B.R. 847 (Bankr. S.D. Ohio 1987)). The Debtors' arguments regarding the settlement being for loss of future earnings are convoluted and do not, in fact, appear to actually argue that the settlement itself was in any part for future earnings. Rather, they appear to argue that approval of the compromise of Bailey's lawsuit against ODOT for reinstatement to his former position prevents him from obtaining future earnings from ODOT and, therefore, the settlement proceeds should be considered compensation for loss of future earnings. At the hearing before the bankruptcy court, the Debtors stated:

> [W]e don't believe the compromise is attributable to future earnings. The only thing we believe was that the lawsuit . . . in Cuyahoga County and the grievance settlement agreement that accompanied it, that we believe was future earnings. We can't find any place where future earnings could be from the compromise. We didn't want the compromise and we don't believe the compromise is in future earnings. We only believe that that lawsuit and everything that was attached to that lawsuit was the future earnings.
>
> . . . .
>
> We're not trying to say that the compromise is - - is our exemption. We want only to exempt the lawsuit that was in our schedules on the - - on Schedule B to be amended to be - - yes, it would effectively void out that compromise . . . .

(Transcript of Exemption Hearing, May 13, 2010, Bankr. Ct. Docket #155, at 7 and 10-11.) In their brief to the Panel, the Debtors explain:

> Denying Bailey's right to pursue his wrongful termination directly and adversely affects Bailey pecuniarily. Bailey's remedy to his contested lawsuit was to "be made whole". Bailey asks for reinstatement to his former position with full back pay and seniority. To deny this exemption stops a recovery of back pay that would fully administer his bankruptcy and denies his right of future earnings from ODOT. Bailey currently earns $13.35/hr. While his former position at ODOT currently makes $22.00/hr. Taking into consideration

11

Bailey's longevity; thus the disparity in his lost wages makes him pecuniarily affected for the rest of his life.

. . . .

We respectfully request [the Panel] to reverse the Bankruptcy Court's decision and approve our exemption for lost future earnings and reverse the compromise made over this proposed exemption.

(Appellants' Br. at 9-10 and 13.) In other words, as the bankruptcy court noted in its memorandum opinion, the Debtors are not seeking to exempt the $17,000 in settlement funds, but rather to throw out the approved settlement so that they may continue to pursue their lawsuit against ODOT in state court.

Amending their schedules to claim the exemption available in Ohio Rev. Code § 2329.66(A)(12)(d) does not provide for such a result. As the bankruptcy court stated in its memorandum opinion, the Debtors cannot pursue their suit against ODOT unless they are successful in their appeal of the bankruptcy court's order approving the settlement. In our August 17, 2010, opinion, this Panel held that the Debtors do not have standing to appeal the order approving the settlement. The Debtors have appealed that decision to the Sixth Circuit Court of Appeals and that appeal is still pending. Consequently, the Debtors are attempting to use this appeal as an end run around the proper appeal process with a collateral attack of the earlier order approving the settlement. *See e.g., Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) (action challenging integrity of court's judgment is impermissible collateral attack; an action is a collateral attack if a court must in some fashion overrule a previous judgment).[2] The Debtors have also taken the appropriate direct attack by appealing the bankruptcy court's order approving the settlement. Rather than attempt to reverse that order by claiming this exemption, they must wait for the appeal process to run its course.

---

[2] The "collateral attack doctrine" bars the tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court. *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004). While the procedural posture of this case does not fall squarely into the collateral attack doctrine pattern, it nevertheless is an attempt to improperly circumvent an earlier ruling of the bankruptcy court by collaterally attacking it.

12

C.      _Burden of Proof_

The Debtors argue that the Trustee failed to meet his burden of proving that the exemption should not be allowed because his objection stated only that the exemption is not applicable, and at the hearing on his objection he claimed only that the settlement agreement was not for future earnings.

Bankruptcy Rule 4003(c) provides that "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections." To meet this burden, the Trustee had to produce evidence which rebuts the prima facie effect of the claimed exemption. _In re Lester_, 141 B.R. at 161. Once such a rebuttal is made, the burden shifts to the Debtors to show that the exemption is in fact proper. _Id._

Contrary to the Debtors' assertions, the Trustee produced evidence rebutting the exemption. At the hearing before the bankruptcy court, the Trustee referred the court to the entire record of the full evidentiary hearing on his motion to approve the compromise of the Debtors' lawsuit, which included the testimony of ODOT's representative regarding the settlement agreement, and, most importantly, the Debtors' stipulation that they had no exemption. Referring to that record, the Trustee asserted that the asset in question was not compensation for loss of future earnings which may be exempted. The stipulation obviated any need by the Trustee to adduce evidence at the prior hearing regarding any apportionment of the settlement for loss of future earnings. The Trustee therefore met his burden of proving that the exemption was not properly claimed by pointing to the record and the prior stipulation.

As such, the burden to show that the exemption was proper then shifted to the Debtors. The Debtors failed to meet that burden. They brought forth no evidence that any portion of the settlement was compensation for loss of future earnings. In fact, as quoted above, the Debtors conceded at the hearing on the Trustee's objection that no portion of the settlement is attributable to future earnings.

The Debtors appear to confuse their right to amend their exemptions as a matter of course at any time before their case is closed, absent bad faith or concealment of property, with their burden

13

of proving that some or all of the settlement amount was attributable to loss of future earnings. They repeatedly cite to cases in support of their right to amend their exemptions, and the fact that the Trustee bore the initial burden to prove the exemption was not properly claimed, but they do not point to any evidence that they met their burden to demonstrate that the exemption was proper once the burden shifted.

In their brief, the Debtors cite, *inter alia*, to *In re Carson*, 82 B.R. 847 (Bankr. S.D. Ohio 1987), a case with some similar facts, which the bankruptcy court discussed in its memorandum opinion. In *Carson*, at the time the debtor filed his chapter 7 petition he had a pending case for employment discrimination against his former employer. Special counsel appointed to the discrimination case at the request of the trustee negotiated a settlement of the case much like the settlement in the instant case. In exchange for a lump-sum payment and a neutral reference letter, the former employer was to receive a general release from the trustee precluding any and all claims which the debtor may have had as a result of his discharge from employment. The trustee, therefore, filed a motion to approve the compromise which the debtor opposed based on his belief that his case was worth substantially more than the settlement reached.

For the first time, at the hearing on the trustee's motion to approve the compromise, the debtor in *Carson* asserted that he was entitled to retain all or part of the proceeds of the settlement because it was "payment in compensation for loss of future earnings" and exempt pursuant to Ohio Rev. Code § 2329.66(A)(12)(d). In addressing the debtor's assertion, the *Carson* court first rejected the trustee's argument that the exemption is intended to cover only losses of future earnings from actual bodily injury to the debtor, and concluded that the exemption operates to exempt any portion of the settlement attributable to lost future wages. The bankruptcy court next addressed the difficulty in applying this exemption because the settlement was in lump-sum form. Acknowledging that there is support for courts allocating a lump-sum payment between various exempt and non-exempt categories, the court declined to do so in *Carson* because there was "not a scintilla of evidence" offered by the parties to assist the court in doing so. *In re Carson*, 82 B.R. at 857.

The *Carson* court then addressed the burden of proof issue noting that as Bankruptcy Rule 4003(c) places the burden of proof on the trustee as the objecting party, the trustee's failure to

adduce evidence with respect to allocation of the lump-sum settlement, and contradict the debtor's characterization of same, could be argued to result in acceptance of the debtor's characterization of the entire amount being exempt as compensation for loss of future earnings. The court declined to do so, however, because the debtor raised the exemption for the first time at the hearing on the motion to compromise, thus depriving the trustee of any notice that he would be required to adduce evidence to refute the exemption. *Id.* While the Sixth Circuit Court of Appeal's permissive approach with respect to amendment of exemptions did not prevent the debtor from asserting the exemption at this stage, the court stated that "basic fairness requires that the Trustee be afforded a meaningful opportunity to interpose an objection . . . ." *Id.* at 858. Therefore, assuming that the exemption was properly scheduled by the debtor, and the trustee timely objected, the bankruptcy court stated it would set an evidentiary hearing to determine what, if any, portion of the settlement would be allocated to compensation for future earnings and subject to exemption under Ohio Rev. Code § 2329.66(A)(12)(d). *Id.*

The procedural posture of *Carson* is distinguishable from that of the case before us. Here, not only did the Debtors not afford the Trustee the opportunity to adduce evidence regarding the allocation of the settlement, they stipulated that they had no exemption in the asset effectively preventing the Trustee from adducing such evidence when the opportunity arose. In this case, there was a full evidentiary hearing on the settlement at which a representative of ODOT, who could have been questioned regarding allocation of the settlement, testified. Understandably, based upon the Debtors' stipulation, the Trustee did not question the ODOT representative on this issue, nor did the Debtors. There is no evidence in the record of this matter that any portion of the settlement is attributable to compensation for loss of future earnings. Therefore, the bankruptcy court did not err in sustaining the Trustee's objection to the Debtors' claim of exemption on the basis that the record contains no evidence to support an inference that any part of the settlement is attributable to compensation for loss of future earnings.

## V.    CONCLUSION

For the foregoing reasons, the order of the bankruptcy court sustaining the Trustee's objection to the Debtors' claim of exemption is AFFIRMED.